UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Eriah Nahnie

v. Civil No. 1:26-cv-461-SE-AJ
Opinion No. 2026 DNH 152

Warden, Federal Correctional Institution,
Berlin, et al.

## O R D E R

Eriah Nahnie, a native and citizen of Liberia currently detained at Federal Correctional Institution, Berlin (FCI Berlin), petitions this court under 28 U.S.C. § 2241 for an order directing the respondents to provide him with "an individualized bond hearing before a neutral decision-maker" under the standard set out in Hernandez-Lara v. Lyons, 10 F. 4th 19, 41 (1st Cir. 2021). Doc. no. 1 at 6. He claims that his over nineteen-month immigration detention has become unreasonably prolonged in violation of the Due Process Clause of the Fifth Amendment, such that he is entitled to a bond hearing. The respondents oppose the petition, arguing that Nahnie's mandatory detention under 8 U.S.C. § 1226(c) does not violate the Due Process Clause. For the reasons explained below, the court concludes that Nahnie's detention without a bond hearing has become unreasonably prolonged in violation of his due process rights and therefore grants the petition, in part.[1]

[1] In addition to his due process claim, Nahnie claims that the respondents have failed to accommodate his application to marry his fiancée while detained, in violation of his constitutional right to marry. The court held a status conference on July 31, 2026, after which it ordered the respondents to "file a status report regarding [Nahnie's] efforts to marry and an anticipated procedure and timeline to facilitate the marriage." On August 14, 2026, the respondents filed a status report representing that they anticipated the marriage would occur during the last week of August. As such, the court does not further address Nahnie's marriage claim. If the marriage did not occur, the court will consider a renewed request for relief.

Background

Nahnie entered the U.S. in 1998 as a derivative asylee. He later obtained indefinite asylum status. While Nahnie's mother was the principal asylee, Nahnie was eligible to adjust his status to that of a lawful permanent resident. Nahnie's mother became a naturalized citizen in 2003, three years before Nahnie filed his application to adjust his status in 2006. Because his mother had already become a naturalized citizen, Nahnie no longer met the definition of a child of an asylee and immigration authorities found him ineligible to adjust his status.

While living in the U.S., Nahnie developed ties to his community in Massachusetts by attending school, working as a general contractor, mentoring others in his church, and volunteering as a soccer coach. Nahnie is engaged or married to a U.S. citizen with whom he shares a one-year-old son and a nine-year-old stepdaughter.

Nahnie's "complex immigration history was interrupted and derailed" when he was convicted of multiple Massachusetts crimes several years ago. Doc. no. 4 at 2. On January 30, 2013, Nahnie pleaded guilty to assault with a dangerous weapon, carrying a firearm without a license, and possession of a firearm without a firearms identification card. A court sentenced him to 579 days of incarceration for carrying a firearm without a license and a term of probation for the other convictions. Subsequently, the court sentenced him to a concurrent term of one year of incarceration for a probation violation. On January 2, 2014, Nahnie pleaded guilty to possession of a class B drug and possession with intent to distribute a class D drug. A court sentenced him to six months of incarceration, to run concurrently with his firearms sentence. On January 22, 2018, Nahnie pleaded guilty to possession of a class B drug and received a term of probation.

Although Nahnie's criminal court records show that courts sentenced him to 579 days of incarceration to run concurrently with six-month and one-year periods of incarceration, Nahnie's

immigration documents state that he was "sentenced to one year of imprisonment." Doc. no. 4-6 at 2; see also doc. no. 4-7 at 5. Nahnie also represents that he "served approximately one year . . . for his crimes," with some suspended time and probation. Doc. no. 8 at 2.

Nahnie alleges that he pleaded guilty to his crimes without the benefit of proper immigration warnings, believing that he was a U.S. citizen. Appeals of some of his convictions are currently pending before the Massachusetts Appeals Court. Nahnie's application to the governor for a pardon is also still pending. The Massachusetts Advisory Board of Pardons held a hearing on Nahnie's application on April 29, 2026, and took the matter under advisement. If he obtains a pardon, Nahnie alleges that he may become eligible for new forms of immigration relief such as cancellation of removal or adjustment of status.

On February 24, 2025, Immigration and Customs Enforcement (ICE) arrested Nahnie outside his home in Worcester, Massachusetts. The respondents first detained Nahnie at Plymouth County Correctional Facility before transferring him to FCI Berlin in May 2025. On May 8, 2025, immigration authorities issued him a notice of intent to terminate his indefinite asylum status due to his conviction for assault with a dangerous weapon, which constitutes an aggravated felony. ICE issued a Notice to Appear (NTA) on May 14, 2026, charging Nahnie as deportable under various provisions of the Immigration and Nationality Act. On September 12, 2025, an immigration judge (IJ) denied Nahnie's requests for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Nahnie appealed to the Board of Immigration Appeals (BIA), and that appeal remains pending. The parties agree that Nahnie is detained pursuant to § 1226(c).

## Discussion

The court first explains why Nahnie's as-applied due process challenge to his § 1226(c) detention as unreasonably prolonged is cognizable. It then evaluates which test governs whether Nahnie's detention has become unreasonably prolonged in violation of due process. Because the court identifies reasons favoring the application of each available test, it applies both.

### I. Nahnie May Challenge His § 1226(c) Detention As Unreasonably Prolonged In Violation Of Due Process

Nahnie argues that his detention without a bond hearing has become unreasonably prolonged in violation of his due process rights. The respondents counter that § 1226(c) mandates Nahnie's detention and precludes a bond hearing. They further contend that the Supreme Court has found detention under § 1226(c) constitutional.[2] The court concludes that Nahnie's claim that his detention without an individualized custody determination has become unreasonably prolonged in violation of due process is not foreclosed by Supreme Court precedent and is cognizable.

Section 1226(c) mandates the detention during removal proceedings of certain "criminal [noncitizens]." "The Supreme Court has held that detention under section 1226(c) without an

[2] The respondents make the additional argument that Nahnie must exhaust the available administrative remedies before seeking relief in this court. This argument is based on the incorrect premise that Nahnie is challenging whether § 1226(c) applies to him. Rather, Nahnie concedes that he is mandatorily detained under § 1226(c) but argues that his detention has become unreasonably prolonged in violation of his due process rights. Even assuming that an administrative remedy exists for this constitutional claim, the court will not require exhaustion under these circumstances. See Singh v. Strafford Cnty. Dep't of Corr., Superintendent, No. 1:25-CV-268-SE-TSM, 2026 WL 2070274, at *2 (D.N.H. July 17, 2026) ("Many courts have recognized that an exception to the common-law exhaustion requirement arises if denying immediate judicial resolution of a claim would work an irreparable harm, such as a loss of liberty.").

initial bond determination does not, on its face, violate the detainee's due process rights where detention is 'for the limited period of . . . removal proceedings.'" Black v. Decker, 103 F.4th 133, 141 (2d Cir. 2024), cert. granted sub nom. Genalo v. Black, No. 25-886, 2026 WL 1718025 (U.S. June 15, 2026) (emphasis in original) (quoting Demore v. Kim, 538 U.S. 510, 531 (2003)). In Demore, a detainee "argued that his detention under § 1226(c) violated due process because the [Immigration and Naturalization Service] had made no determination that he posed either a danger to society or a flight risk." 538 U.S. at 514. The Court rejected this argument, holding that "Congress, justifiably concerned that deportable criminal [noncitizens] who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons [subject to mandatory detention under § 1226(c)] be detained for the brief period necessary for their removal proceedings." Id.

Essential to the holding in Demore, however, "was the purportedly finite nature of section 1226(c) detention." Lino-Ramos v. Moniz, No. CV 25-10470-BEM, 2026 WL 1759415, at *3 (D. Mass. June 18, 2026); see also Reid v. Donelan, 819 F.3d 486, 493 (1st Cir. 2016) (Reid II), opinion withdrawn on reconsideration, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018) (noting that the detainee in Demore "argued that his detention was unconstitutional from the outset due to the categorical nature of the mandatory detention regime" and that the "Court made the brevity of the detention central to its holding" (emphasis in original)). The Demore Court specifically reasoned that "the detention at stake under § 1226(c)" has "a definite termination point" and "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the [noncitizen] chooses to appeal." 538 U.S. at 529-30. Thus, even against the backdrop of Demore, which found a "brief period" of mandatory detention under § 1226(c) constitutionally permissible, id. at 513, courts

have recognized that there may come a point at which detention under § 1226(c) becomes unreasonably prolonged in violation of due process. See, e.g., Martignago v. Warden, Strafford County Department of Corrections, No. 1:26-CV-134-SM-AJ, 2026 WL 2481179, at *3 (D.N.H. August 25, 2026); Lino-Ramos, 2026 WL 1759415, at *4; Rocha v. Barr, 422 F. Supp. 3d 472, 482 (D.N.H. 2019).[3]

The court acknowledges that the "Supreme Court has also ruled that section 1226(c) itself authorizes prolonged detention" and the text of the statute "does not require a bond hearing after some predetermined period of detention." Black, 103 F.4th at 141-42 (citing Jennings v. Rodriguez, 583 U.S. 281, 296-97, 303, 311-12 (2018)). Importantly, however, "Demore and Jennings leave open the question whether prolonged detention under section 1226(c) without a bond hearing will at some point violate an individual detainee's due process rights." Id. at 142. Indeed, the Court in Jennings, "having reached a statutory decision[,] remanded . . . to the Ninth Circuit for consideration of the constitutional arguments in the first instance." Id. (citing Jennings, 583 U.S. at 312).

Accordingly, this court and others in this district have recognized that noncitizens detained without an individualized custody determination may bring as-applied constitutional challenges to unreasonably prolonged detention. See Rosales-Navares v. FCI Berlin, Warden, No. 1:26-CV-232-PB-AJ, 2026 WL 1133463, at *3-6 (D.N.H. Apr. 27, 2026) (collecting cases).

---

[3] Justice Kennedy's concurrence also supports a reading of Demore that does not foreclose challenges to unreasonably prolonged § 1226(c) detention. He reasoned that a detainee "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (2003) (Kennedy, J., concurring). He acknowledged that if there was an "unreasonable delay . . . in pursuing and completing deportation proceedings, it could become necessary to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." Id. at 532-33.

In Rosales-Navares, Judge Barbadoro found a noncitizen's prolonged detention constitutionally unreasonable even though it was lawful at its outset pursuant to 8 U.S.C. § 1231(a)(6). 2026 WL 1133463, at *3, 6. And in Rocha, Judge Laplante analyzed as cognizable a claim of unreasonably prolonged detention even though the detention was mandated by § 1226(c). 422 F. Supp. 3d at 480-82. Further, the Second and Third Circuits have recognized that detention under § 1226(c) may become unreasonably prolonged, such that due process requires a bond hearing to determine whether the detainee poses a flight risk or danger to the community. Black, 103 F.4th at 151-55; German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 212-13 (3d Cir. 2020). Consistent with these decisions, the court concludes that Nahnie may challenge his mandatory detention under § 1226(c) as unreasonably prolonged in violation of his due process rights.

## II. It Is Unclear Which Test Determines Nahnie's Claim

It is not clear whether the court should assess the reasonableness of Nahnie's continued detention without a bond hearing under Mathews v. Eldridge, 424 U.S. 319 (1976) or Reid II, 819 F.3d at 500-01. Nahnie argues that the factors established in both cases are simultaneously controlling.[4] The respondents argued at a status conference that of the two tests, Mathews should control because that is the framework the First Circuit applied in Hernandez-Lara, 10 F.4th at 27.

In the First Circuit, there is no binding test under which courts decide whether continued detention under § 1226(c) violates due process. Lino-Ramos, 2026 WL 1759415, at *5. Rocha reasoned that "[t]he best framework for assessing a due process constitutional challenge to continued detention without a bond hearing is the non-exhaustive list of reasonableness factors

[4] Nahnie cites the First Circuit's second opinion in the Reid litigation, Reid v. Donelan, 17 F.4th 1 (1st Cir. 2021) (Reid IV), but then applies the factors established in the Circuit's earlier opinion, Reid II, 819 F.3d at 500-01.

set out in the withdrawn First Circuit opinion in [Reid II].” 422 F. Supp. 3d at 480; see also Lino-Ramos, 2026 WL 1759415, at *6 (collecting cases that found the Reid factors instructive). The “First Circuit’s discarded approach in Reid” is “much like” the “multi-factor reasonableness test” employed by the Third Circuit and courts in this district considering claims of unreasonably prolonged detention. Rosales-Navares, 2026 WL 1133463, at *4 (citing German Santos, 965 F.3d at 211). Differently, the Second Circuit and some district courts have applied the Mathews framework to determine whether an individual’s prolonged detention under § 1226(c) violates due process. See Black, 103 F.4th at 147; Lino-Ramos, 2026 WL 1759415, at *6. Courts applying the former analysis seem to consider it more “flexible” and better suited to a “fact-specific,” “case-by-case approach,” but courts adopting the latter route have reasoned that Mathews “remains a flexible test” that “takes account of individual circumstances.” See Black, 103 F.4th at 146-48. Lino Ramos reasoned that “[u]ltimately, the First Circuit will need to weigh in on the proper standard,” so applied both the Reid and Mathews considerations “for the sake of completeness.” 2026 WL 1759415, at *7.

Different reasons favor the application of each available test. On the one hand, in the other cases out of this district considering claims of unreasonably prolonged detention, this court and others have applied the Reid-like multi-factor reasonableness test adopted by the Third Circuit. See Rosales-Navares, 2026 WL 1133463, at *3-4 (citing German Santos, 965 F.3d at 211). And the First Circuit specifically crafted the Reid factors to assess whether the length of detention has become unreasonable, whereas in Hernandez-Lara the First Circuit applied Mathews to determine whether a particular procedure was required at bond hearings. Compare Reid II, 819 F.3d at 500, with Hernandez-Lara, 10 F.4th at 27.

On the other hand, this court applied Mathews in Destino v. FCI Berlin, Warden, which considered a procedural due process claim in the face of the respondents' contention that the petitioner was mandatorily detained under § 1225(b)(1)(B)(ii), a claim that both resembles and is distinct from Nahnie's challenge to his detention under § 1226(c). No. 1:25-CV-374-SE-AJ, 2025 WL 4010424, at *1-2, 9-14 (D.N.H. Dec. 24, 2025). Nahnie, like Destino, argues that he is entitled to a bond hearing as a matter of due process, but Nahnie's claim adds a layer—he argues that he is entitled to a bond hearing because his detention has exceeded a reasonable length. Further, Reid II "addressed a statutory rather than constitutional challenge to detention." Lino-Ramos, 2026 WL 1759415, at *5 (emphasis in original) (citing Reid IV, 17 F.4th at 5). And "the First Circuit later withdrew Reid II in light of [Jennings], which rejected the contention that section 1226(c) requires a bond hearing after six months of detention." Id.

In light of the reasons favoring the application of each test, the court will consider Nahnie's claim under both the non-exhaustive list of factors from Reid II and the Mathews balancing framework.

## III. *Reid* Factors

To evaluate the reasonableness of continued detention under § 1226(c),

> a court might examine, inter alia, the total length of the detention; the foreseeability of proceedings concluding in the near future (or the likely duration of future detention); the period of the detention compared to the criminal sentence; the promptness (or delay) of the immigration authorities or the detainee; and the likelihood that the proceedings will culminate in a final removal order.

Reid II, 819 F.3d at 500. The list is non-exhaustive, and "[t]here may be other factors that bear on the reasonableness of categorical detention." Id. at 501.

A. Length of Detention

"The length of the detention is 'the most important factor in determining whether detention has become unreasonably prolonged.'" Rocha, 422 F. Supp. 3d at 481 (quoting Reid v. Donelan, 390 F. Supp. 3d 201, 209-10 (D. Mass. 2019) (Reid III)). "Although a one-year period of detention is not a 'bright line,' detention is 'likely to be unreasonable if it lasts for more than one year during removal proceedings before the agency, excluding any delays due to the [noncitizen's] dilatory tactics.'" Alphonse v. Moniz, 635 F. Supp. 3d 28, 36 (D. Mass. 2022) (quoting Reid III, 390 F. Supp. 3d at 219-20).

Here, Nahnie has been detained since February 24, 2025, more than nineteen months. That far surpasses the brief period of "about five months in the minority of cases in which the [noncitizen] chooses to appeal" contemplated in Demore, 538 U.S. at 530. It also exceeds the one-year mark at which detention is "presumptively unreasonable," Alphonse, 635 F. Supp. 3d at 36. And nothing in the record suggests that Nahnie has engaged in dilatory tactics prolonging his detention. See Reid II, 819 F.3d at 500 n.4 (stating that "there is a difference between 'dilatory tactics' and the exercise of [a noncitizen's] rights to appeal"). Although the respondents argued at the status conference that courts have found acceptable and not unreasonably prolonged detentions of two years or more, the court has identified no binding authority, or persuasive authority out of the First Circuit, holding as much. Accordingly, this "most important factor" weighs in favor of Nahnie.

B. Foreseeability of Proceedings Concluding

"Courts next consider 'the foreseeability of proceedings concluding in the near future.'" Lino-Ramos, 2026 WL 1759415, at *7 (quoting Reid III, 390 F. Supp. 3d at 211). This factor

favors the government "when the proceedings are at an advanced stage and there is reason to expect an expedient resolution." Id. However, "where resolution may take many months or has an unpredictable timeline," this factor favors the detainee. Id. at *8.

Nahnie argues that the IJ denied his applications for relief from removal in September 2025 and his appeal of that decision has been pending before the BIA for over one year. There is no indication that the BIA will consider his case on an expedited basis. Compare Dos Santos v. Moniz, No. CV 21-10611-PBS, 2021 WL 3361882, at *4 (D. Mass. May 18, 2021) (finding that the petitioner's case was "nearing resolution" where ICE had filed a motion to expedite his appeal to the BIA). While it is true that the matter is submitted to the BIA, which could theoretically resolve it at any time, even if the BIA dismisses Nahnie's appeal, he will likely exercise his right to petition the First Circuit for review of that decision and seek a stay of removal. See Destino, 2025 WL 4010424, at *10 n.11. Further, the unpredictable timeline for removal proceedings, and detention during those proceedings, is highlighted by the fact that Nahnie's appeal has already been pending for over one year. Compare Reid III, 390 F. Supp. 3d at 212 (noting that "[i]n 2018, the median pendency of an appeal to the BIA was around four months"); see also Destino, 2025 WL 4010424, at *11 ("Courts have repeatedly recognized the substantial backlog of immigration cases awaiting administrative and judicial review."). Given the "unpredictable timeline" for resolution of Nahnie's appeal to the BIA and any subsequent proceedings, this factor slightly favors Nahnie.

C. Period of Detention Compared to Criminal Sentence

The third Reid factor "compares the length of detention with the length of [the] petitioner's criminal sentence." Alphonse, 635 F. Supp. 3d at 37. "The length of detention by

immigration authorities may become unreasonable when it is grossly disproportionate to the length of the detainee's criminal sentence." Id. But see Lino-Ramos, 2026 WL 1759415, at *8 (declining to follow the gross-disproportionality framing, reasoning that "[a]n unduly long period of detention during removal proceedings cannot be permissible merely because the period of criminal detention was likewise lengthy"). This factor "compares the period of ICE detention with the actual time [spent] in incarceration as a result of the underlying criminal conviction, not the length of a related suspended sentence." Da Graca v. Souza, No. 20-CV-10849-PBS, 2020 WL 2616263, at *3 n.1 (D. Mass. May 22, 2020).

Here, Nahnie represents, and the respondents do not dispute, that although he was initially sentenced to 579 days of incarceration plus shorter concurrent terms for his crimes, he actually served approximately one year. He points out that his immigration detention has exceeded that time. The respondents argued at the status conference that the court should consider the periods of probation ordered by the criminal courts in comparing the two sentences. But because Nahnie was free to live in the community while on probation, the court concludes that the proper comparison is between the carceral sentence actually served and the time in immigration detention. See Da Graca, 2020 WL 2616263, at *3 n.1.

The question becomes whether Nahnie's nineteen-plus months in immigration detention is "grossly disproportionate" to the approximately one year he served for his crimes. Certainly, six months in immigration detention is not inconsequential. And at least one court has found that a six-month difference in the periods of detention favored the detainee. Campbell v. Moniz, No. CV 20-10697-PBS, 2020 WL 2129594, at *6 (D. Mass. May 5, 2020) ("The four months [the petitioner] served on his criminal sentence as compared to the ten months he has spent in immigration detention weighs in his favor but is not so grossly disproportionate as to outweigh

the other factors at this time."). In Nahnie's case, the court finds that the difference between the approximately one year he served for his crimes and the over nineteen months he has been in immigration detention is meaningfully disproportionate. Therefore, to the extent that this factor is useful in the Reid analysis, see Lino-Ramos, 2026 WL 1759415, at *8, it favors Nahnie.[5]

D. Promptness of the Parties

"The fourth Reid factor is the promptness of the immigration authorities and the detainee." Lino-Ramos, 2026 WL 1759415, at *8 (citing Reid II, 819 F.3d at 500). The respondents argued at the status conference that Nahnie delayed commencing his own immigration proceedings because in 2007, immigration authorities denied Nahnie's application to adjust his status on timeliness grounds. But any delay attributable to Nahnie in 2007 cannot be said to have prolonged his present detention, which commenced in 2025. The function of this factor is to ensure that a detainee cannot run out the clock by seeking continuances, thus artificially prolonging his own detention. Nahnie, for his part, argues that he sought no continuances in immigration court and was therefore "not responsible for any delay in his case, while the government held him in detention for four months before ever filing a Notice to Appear." Doc. no. 8 at 2. Indeed, the respondents detained Nahnie on February 24, 2025, but did not file the NTA commencing his removal proceedings until almost four months later on May 12, 2025. And they did not notice their intent to terminate his asylum status until a few days

[5] The court agrees with the reasoning in Lino-Ramos, 2026 WL 1759415, at *8, that this factor is of limited utility to the Reid reasonableness analysis, as a lengthy period of incarceration already served cannot greenlight the doubling of that time via a comparably long immigration detention. But here, it is another drop in the bucket for Nahnie that, due to his criminal convictions, he has now been in immigration detention for seven months longer he served for those crimes.

before that on May 8, 2025. Thus, Nahnie sat in detention for almost four months before the respondents even charged him as removeable. Accordingly, the only relevant delay in Nahnie's case is attributable to the respondents, so this factor favors Nahnie.

E. Likelihood of Final Removal Order

"The final Reid factor is the likelihood that the proceedings will culminate in a final removal order." Lino-Ramos, 2026 WL 1759415, at *9 (citing Reid II, 819 F.3d at 500). "However, . . . the First Circuit suggested elsewhere in [Reid II] that this factor contemplates the likelihood of actual removal." Id. (emphasis in original) (citing Reid II, 819 F.3d at 500 n.4). The IJ's oral decision denying Nahnie's applications for relief from removal is not in the record, so the court cannot assess the likelihood that Nahnie will prevail on appeal to the BIA. See Tahlil v. Moniz, No. CV 20-10847-PBS, 2020 WL 2560967, at *3 (D. Mass. May 20, 2020) (noting that the IJ's decision is the "best guide in determining the likelihood that the proceedings will conclude in a final removal order"). For what it is worth, Nahnie represented at the status conference that he thinks he has a meritorious CAT claim and could prevail on appeal to the BIA. Nahnie further argues that he "has reason to be optimistic" about the likelihood of actual removal given "the potential for new forms of relief if he succeeds in the Massachusetts criminal appeals and pardon petitions." Doc. no. 8 at 4. But without more information, the merits of Nahnie's challenges to his convictions are unclear, so the court cannot determine that his actual removal is unlikely on that basis. As such, this factor favors no party.

F. Other Factors and Overall Weighing

In Reid II, the First Circuit noted that its list was not exhaustive and that "there may be other factors that bear on the reasonableness of categorical detention." 819 F.3d at 501. Nahnie

argues that "[t]he conditions of confinement at FCI Berlin have" caused "him great heartache as he has been far from his family in Worcester, Massachusetts and . . . suffers from anxiety and Post Traumatic Stress Disorder." Doc. no. 8 at 4. Under the Third Circuit's test, if the conditions of confinement are "indistinguishable from criminal punishment," this favors a finding of unreasonableness. German Santos, 965 F.3d at 212-13; see also Rosales-Navares, 2026 WL 1133463, at *6 ("Penal facilities are the archetypal example of such conditions."). The court accordingly finds that Nahnie's detention in penal facilities for over nineteen months weighs in favor of a finding that his continued detention is unreasonable.

Even without considering the conditions of confinement, however, the balance of the established Reid factors supports a finding of unreasonableness. See Lino-Ramos, 2026 WL 1759415, at *9. The most important factor, the length of detention, favors Nahnie. Further, the unpredictable timing of a BIA resolution of Nahnie's appeal and the respondents' delay in commencing his removal proceedings also cut in Nahnie's favor. Nahnie's claim is minimally strengthened by the fact that his immigration detention has become disproportionate to the period he served for his crimes. The remaining factors favor neither party. As such, the court concludes that the Reid factors indicate that Nahnie's continued detention without a bond hearing offends due process.

## IV. *Mathews* Interest Balancing

Under Mathews, courts consider the following factors when evaluating whether particular procedures are constitutionally sufficient:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

> administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335.

A. Private Interest

The court begins by considering "the private interest that will be affected by the official action." Mathews, 424 U.S. at 335. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Hernandez-Lara, 10 F.4th at 28 (alteration in original) (quoting Zadvydas v. Davis, 533 U.S. 678, 695 (2001)). "The Supreme Court has repeatedly affirmed that in our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Id. (quotations and alterations omitted). "For this reason, civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections." Id. (quotations omitted) (emphasis in original). In Hernandez-Lara, the First Circuit recognized that an immigration detainee "suffers significant liberty deprivations" "subject to important constitutional limitations," notwithstanding that "detention during deportation proceedings is a constitutionally valid aspect of the deportation process." Id. at 28-29 (alterations and quotations omitted).

Here, Nahnie is a partner, father, worker, and active member of his community. He serves as a mentor in his church and volunteers as a soccer coach. Save for the severity of his criminal history, he is materially indistinguishable from the petitioner in Destino, who this court found had "a weighty liberty interest in working in the United States and living alongside his family," even though he had a "minor, nonviolent criminal history." 2025 WL 4010424, at *10-12 (quotations omitted). And as the Second Circuit reasoned in Black, although Nahnie is

detained under § 1226(c) because of his serious criminal convictions, he has "served his entire sentence," and his current detention does "not arise from new or unpunished conduct." 103 F.4th at 151. Thus, although § 1226(c) constitutionally authorized Nahnie's detention at its outset based on his criminal history, he has now been detained "far longer, and [his] liberty interest[] more seriously infringed" than the short period of detention contemplated in Demore. Id. (citing 538 U.S. at 529). What is more, the prolonged nature of Nahnie's detention, as compared to the shorter period of detention considered in Destino, has compounded the strain on his family ties and mental health. See Lino-Ramos, 2026 WL 1759415, at *10.

For these reasons, Nahnie's private interest weighs heavily in favor of finding his detention unreasonably prolonged.

B. Risk of Erroneous Deprivation

Next, the court considers "the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. As recognized in Black, "the almost nonexistent procedural protections in place for section 1226(c) detainees markedly increase[] the risk of an erroneous deprivation of [the detainee's] private liberty interests." 103 F.4th at 152. First, § 1226(c) comes with "no mechanism for a detainee's release, nor for individualized review of the need for detention." Id. The only procedure available to § 1226(c) detainees is a "Joseph hearing, at which noncitizens can contest whether they in fact committed a crime that makes them subject to mandatory detention." Id. (citing Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999)). Second, § 1226(c)'s detention mandate sweeps in noncitizens who, on an individualized basis, are not dangerous, have strong family and community ties, and are not flight risks. Id. There is thus a

risk that § 1226(c) is a "poor proxy" for an individualized dangerousness finding because the statute encompasses nonviolent or temporally remote offenses. Id.

Here, the facts of Nahnie's case suggest that he could be subject to an erroneous deprivation of liberty if his § 1226(c) detention drags on without an individualized custody determination. After all, Nahnie's most recent criminal conviction is from 2018, eight years ago, and the record shows that he has lived a peaceful and law-abiding life in the years since. The remoteness of his criminal conduct as compared to his more recent positive contributions to his community could support a finding at a bond hearing that he is not dangerous. See Matter of Guerra, 24 I & N Dec. 37, 40 (BIA 2006) (instructing IJs to consider, among other factors, "the recency of . . . [any criminal] activity" in making bond determinations). Further, because Nahnie does not dispute that he committed the crimes subjecting him to mandatory detention under § 1226(c), there are presently no procedures available to him, so the added protection of a bond hearing at which an IJ can consider his individualized dangerousness and risk of flight is highly valuable. See Black, 103 F.4th at 153 ("In the absence of any meaningful initial procedural safeguards, it appears to us that almost any additional procedural safeguards at some point in the detention would add value." (emphasis in original)); Destino, 2025 WL 4010424, at *13 ("A bond hearing before an IJ would provide Destino the opportunity be heard and receive a meaningful assessment of whether he is dangerous or likely to abscond, so would greatly reduce the risk of erroneous deprivation of his liberty." (quotations omitted)).

As such, the second Mathews factor also heavily favors Nahnie.

C. Government Interest

Under the final Mathews factor, the court considers "'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail'—which ultimately entails an assessment of the 'public interest.'" Hernandez-Lara, 10 F.4th at 32 (quoting Mathews, 424 U.S. at 335). "The prompt execution of removal orders is a legitimate governmental interest which detention may facilitate." Id. (citations omitted). Likewise, the government has a legitimate interest in "protecting the community from noncitizens who have been involved in crimes that Congress has determined differentiate them from others." Black, 103 F.4th at 153 (citing Demore, 538 U.S. at 520-21). The additional safeguard of a bond hearing, however, does not undercut these legitimate interests because at such a hearing, an IJ undertakes an individualized assessment of the detainee's flight risk and dangerousness. Black, 103 F.4th at 153-54. Moreover, "while the government's legitimate interests justify a relatively short-term deprivation of liberty, . . . the balance of interest shifts as the noncitizen's detention is prolonged without any particularized assessment of need." Id. at 154 (citing Demore, 538 U.S. at 513).

"[U]nnecessary detention imposes substantial societal costs." Hernandez-Lara, 10 F.4th at 33. "Where the noncitizen poses no danger and is not a flight risk, all the government does in requiring detention is separate families and remove from the community breadwinners, caregivers, parents, siblings and employees," which is against the public interest. Black, 103 F.4th at 154 (quotations and alterations omitted); see also Hernandez-Lara, 10 F.4th at 33. While providing a bond hearing is "an administrative and fiscal burden of some kind," it is also true that "retaining and housing detainees imposes substantial costs." Black, 103 F.4th at 154. As such, "the additional resources that the government will need to expend to justify continued

detention at bond hearings will be minimal—and will likely be outweighed by costs saved by reducing unnecessary detention." Id. at 154-55.

Nahnie's case illustrates these points. The government has borne the cost of detaining him for over nineteen months based on the statutory assumption that his past crimes render him currently dangerous. During that time, his children have lost the support of their father and his wife or fiancée that of her partner. Nahnie has been unable to contribute to society as a general contractor, church mentor, and soccer coach. He and his family have also been hindered in planning for his possible removal.

For these reasons, the third Mathews factor favors Nahnie as well. As such, because all three Mathews factors weigh in favor of Nahnie, his detention has become unreasonably prolonged such that he is entitled to a bond hearing before an IJ.

## V. The *Hernandez-Lara* Burdens of Proof Apply

Although Hernandez-Lara allocated the burdens of proof under § 1226(a), the respondents have not argued that some other standard governs a bond hearing ordered to remedy unreasonably prolonged detention under § 1226(c). This court reasoned in Destino that it was "at most a logical extension of Hernandez-Lara's holding" to require, as a matter of due process, that the government prove the existence of a flight risk or dangerousness to justify continued detention. 2025 WL 4010424, at *9. Here, although Nahnie's mandatory detention was categorically required at its outset by § 1226(c), as the court explained above, his detention has now become unreasonably prolonged such that a bond hearing is required as a matter of due process. In this context, it is again a logical extension of Hernandez-Lara to require "the government to either (1) prove by clear and convincing evidence that [Nahnie] poses a danger to

the community or (2) prove by a preponderance of the evidence that [he] poses a flight risk." 10 F.4th at 41. The court recognizes that Hernandez-Lara distinguished discretionary detention under § 1226(a) from mandatory detention under § 1226(c), but in the same breath the court recognized that the Supreme Court left open the possibility that detention under § 1226(c) could become unreasonably prolonged. Id. at 35 (citing Demore, 538 U.S. at 532-33 (Kennedy, J., concurring)). Further, both the Second and Third Circuits have allocated the burden of proof to the government at bond hearings ordered once § 1226(c) detention becomes unreasonably prolonged. Black, 103 F.4th at 157; German Santos, 965 F.3d at 213. For these reasons, the court concludes that the Hernandez-Lara burdens of proof govern Nahnie's bond hearing.

## Conclusion

For the foregoing reasons, the petition for writ of habeas corpus is granted, in part. The respondents are ordered to provide Nahnie with a bond hearing before an IJ as soon as practicable at which the respondents will bear the burden of proving either that Nahnie is a flight risk by a preponderance of the evidence or that he is dangerous by clear and convincing evidence. Hernandez-Lara, 10 F.4th at 41. The respondents shall file a status report within seven days, on or before October 26, 2026.

SO ORDERED.



Samantha D. Elliott
United States District Judge

October 19, 2026

cc: Counsel of record.